

**ORDERED in the Southern District of Florida on May 15, 2019.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:
                                           **Case No. 17-23522-JKO**

**PETER ALLAN WIZENBERG**,

                                           **Chapter 7**

         Debtor.
_____/

**HOWARD WIZENBERG**,                          **Adv. No. 18-01019-JKO**

         Plaintiff
vs.

**PETER WIZENBERG**,

         Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S RENEWED AND SUPPLEMENTAL MOTION
FOR ATTORNEY'S FEES AS AN APPROPRIATE SANCTION FOR DEFENDANT'S
<u>CONDUCT THROUGHOUT THIS CASE [ECF 215] PURSUANT TO 28 U.S.C. § 1927</u>**

      **THIS CASE** came before the Court for a hearing on March 20, 2019, upon Howard

Wizenberg's ("Plaintiff") Renewed and Supplemental Motion for Attorney's Fees as an

Appropriate Sanction for Defendant's Conduct throughout Case (the "Renewed Motion for

1

Sanctions") [ECF 215].[1]    Plaintiff has requested the imposition of sanctions against Peter

Wizenberg ("Debtor" or "Defendant") on multiple occasions, as described below.  At each juncture

of Plaintiff requesting sanctions against Defendant, this Court pushed the matter along in order to

obtain a plenary understanding of the case and Defendant's behavior.[2]  At the June 19, 2018

hearing for Plaintiff's First Motion for Sanctions [ECF 31 in case 17-23522-JKO], this Court stated

that it believed § 1927 sanctions are only appropriate "late in the day" particularly when litigation

is ongoing—that day has now arrived.  Upon consideration of the pleadings, reported out-of-court

practices, and observed courtroom behavior, this Court finds that Peter Wizenberg unreasonably

and vexatiously multiplied these proceedings, and, therefore, sanctions against Debtor-Defendant,

Peter Wizenberg, are appropriate under 28 U.S.C. § 1927.

## I.    Background

Defendant filed his Chapter 7 bankruptcy petition on November 8, 2017.  [17-23522-JKO,

ECF 1].  Plaintiff, Defendant's brother, filed this adversary proceeding on January 16, 2018 [ECF

1], seeking to recover or turnover of money or property; to object to or revoke a discharge, to

determine the dischargeability of Plaintiff's claim; to obtain an injunction from Defendant

discharging his debt due to willful and malicious actions; and to determine a claim or cause of

action removed from state court pursuant to 28 U.S.C. § 1452.

Defendant Peter Wizenberg is a lawyer who was admitted to The Florida Bar in 2007.[3]

Peter Wizenberg has represented parties in 40 cases before this Court, including his own current

---

[1] All ECF references in this Order, unless otherwise designated, are in reference to adversary proceeding case
number 18-01019-JKO.
[2] [ECF 154, p. 34, ll. 10-14 ("I've actually written on the question of whether 1927 sanctions are available against
pro se parties, and I believe they are, I'm inclined to defer on that until after trial, just to see where things are
going.")].
[3] FLORIDA BAR, https://www.floridabar.org/directories/find-mbr/ (last visited April 29, 2019).

case as a Chapter 7 debtor and this current adversary proceeding, which involves disputes between Peter Wizenberg and his brother, the Plaintiff Howard Wizenberg. Those disputes arise out of property and other disputes following the death of their mother, Ann Wizenberg. Peter Wizenberg served as original personal representative of their mother's estate, was removed from that office by the Circuit Court for Seminole County, Florida, at the insistence of Plaintiff, and was succeeded by Plaintiff.

### A. Pre-Trial

Defendant filed a Partial Motion to Dismiss [ECF 11] on February 23, 2018, in response to Plaintiff's Amended Complaint [ECF 8]. This Court denied the Partial Motion to Dismiss on February 27, 2018, stating that the Amended Complaint was sufficient because it "plead a *prima facie* case for each claim at this early stage in the litigation" by providing a "short and plain statement of the claim showing that the pleader is entitled to relief . . . [with] factual allegations presented rais[ing] the right to relief above the speculative level." [ECF 12]. Defendant filed his *43-page* Answer and Affirmative Defenses on March 13, 2018 [ECF 18]. Between March 25 and March 28, 2019, initial disclosures were filed [ECF 20, 21, 22, 23], and Defendant's wife, Pantanassa Wizenberg, was subpoenaed [ECF 24] and served notice [ECF 25]. Defendant then filed a *46-page* Amended Answer and Affirmative Defenses [ECF 32] on March 28, 2018.

On March 23, 2018, Defendant filed a *33-page* Response [ECF 35] to Plaintiff's pleadings [ECF 32, 33, 34], and a *67-page* Motion for Summary Judgment [ECF 36] on March 30, 2018. Defendant's Motion for Summary Judgment [ECF 36], as well as Plaintiff's Motion for Summary Judgment on Count II of the Complaint [ECF 34], were denied later on April 24, 2018 [ECF 50], due to the existence of genuine issues of material fact that must be resolved at trial.

On April 18, 2018, this Court held a hearing on Plaintiff's Motion to Strike All of Defendant's Affirmative Defenses, and Defendant's First and Thirteenth Affirmative Defenses were stricken without prejudice.  [ECF 48].  At the April 18 hearing, the Court pointed out to Defendant that he had "asserted two affirmative defenses of the statute of limitations" but he failed to say what the statute of limitation is or what statute applies.  [ECF 59, p. 4].  The Court also highlighted that the "rest of what [he] assert[ed] as affirmative defenses, are not affirmative defenses, the nature of which are set forth in the rules, but are simply elaborations on denials of various aspects of [P]laintiff's case in chief. [The Court] d[id] not understand why [Defendant] would call them affirmative defenses."  [ECF 59, pp. 4-5].  The Court proceeded to strike two affirmative defenses, as they were just denials.  [ECF 59, p. 18]; see also [ECF 48].  Defendant then filed Motion for Leave to Amend First and Thirteenth Affirmative Defenses Which Were Struck without Prejudice, and Second Amended First and Thirteenth Affirmative Defenses [ECF 58].  This Court entered an Order [ECF 50] on April 24, 2018, denying Plaintiff's Motion for Summary Judgment on Count II of the Complaint [ECF 34] and denying Defendant's Motion for Summary Judgment against Plaintiff [ECF 36].

On May 20, 2018, Defendant filed a *69-page* Motion to Dismiss Count II for Lack of Subject Matter Jurisdiction (the "Second Motion to Dismiss") [ECF 62].  The hearing for the Second Motion to Dismiss was set for June 19, 2018 [ECF 65].  On June 5, 2018, in the main bankruptcy case, Plaintiff responded to the Motion to Dismiss for Lack of Jurisdiction by filing a Motion for the Imposition of Sanctions against Defendant  pursuant to 28 U.S.C. § 1927 (the "First Motion for Sanctions") [17-23522-JKO, ECF 31].  As Plaintiff stated in its First Motion for Sanctions, "[o]ther than to needlessly increase the costs of litigation to Plaintiff, there can be no

good faith basis for the Debtor to take the position that this Court lacks subject matter jurisdiction to determine whether his debt to the Plaintiff is dischargeable."  [17-23522-JKO, ECF 31, p. 3].

Then, on June 5, 2018, Defendant filed a *153-page* Motion for Reconsideration of Order and Motion to Vacate Order Denying Defendant's Motion for Summary Judgment ("Motion for Reconsideration") [ECF 68], even though the 14-day filing deadline from the time of the entry of the Order had lapsed, making the pleading untimely pursuant to Bankruptcy Rule 9023 (albeit timely under Bankruptcy Rule 9024, applying Fed. R. Civ. P. 60(b)).  In Defendant's Motion for Reconsideration, Defendant states that the Court erred [ECF 68, pp. 12-13] in regards to the standard applied to deny Defendant's Motion for Summary Judgment [ECF 36].  This Court's Order [ECF 36], however, clearly states that Defendant's Motion for Summary Judgment was denied "due to the existence of genuine issues of material fact that must be resolved at trial" [ECF 50], which is the correct standard.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").  Defendant filed a 9-page Response in Opposition to Plaintiff's Motion for Imposition of Sanctions against Defendant [ECF 73] on June 13, 2018.

The first hearing on the First Motions for Sanctions, on June 19, 2018, was continued to August 29, 2018, but the Court took time to address the implications of the then-pending motion for sanctions at the June 19 hearing.  The Court began by stating that it believes (1) § 1927 relief is available against pro se parties who are not members of the bar, although, here, Defendant is a member of The Florida Bar, and (2) this Court has the ability and the constitutional and statutory right to grant § 1927 sanctions.  In choosing not to rule on whether § 1927 sanctions should be

imposed yet, the Court reasoned that it is reluctant to do so in a matter of ongoing litigation, and that such sanctions were more appropriate to consider "late in the day." In an attempt to caution the Parties, the Court expressed its hope that the pending sanctions motion would encourage better behavior from the Parties since the Court—even at that point—believed the pleadings and motions filed in the case were overwrought. At multiple times throughout the hearing, the Court acknowledged the difficulty presented with family disputes but also urged the parties to use caution and act as professionals for the remainder of the case.

On June 11, 2018, Defendant filed a *53-page* Motion to Compel Response to First Request for Production Filed by Defendant [ECF 69], which was subsequently withdrawn the same day [ECF 70]. On June 13, 2018, Defendant filed a *25-page* Motion for Leave to Amend [ECF 71] his 153-page Motion to Reconsider [ECF 68]. On July 12, 2018, Defendant filed his *25-page* Opposition [ECF 95] to Plaintiff's Motion to Compel and Motions to Limit Plaintiff's Deposition to One Day [ECF 92].

At Defendant's deposition on August 6, 2018, Plaintiff's counsel claimed on the record that Defendant raised his voice to him. [Defendant Deposition, p. 14, ll. 1-13]. At this deposition, Defendant also claimed he did not know what a privilege log is. [Defendant Deposition, p. 22, ll. 9-24]. Moreover, in response to Plaintiff's counsel's questions, the following back-and-forth occurred, in which Defendant attempted to depose himself:

> Plaintiff Counsel: And if Howard was disinherited from the will, who would have gotten everything?
>
> Defendant: Me. Pause one moment. Do I have an opportunity to ask myself questions? Because I am an attorney and I also am pro se, so I want to be able to ask myself questions in response to his questions, like, after he's finished, I want to ask myself questions and I want to do that and I'm on record as saying I want to do that.

Plaintiff Counsel: I understand, but you can just present your direct testimony. I don't want to make this transcript very long.

Defendant: Well, I want the opportunity to ask questions and answer them myself.

Plaintiff Counsel: Well, you can do that tomorrow if you'd like.

Defendant: Well, I can do that today.

Plaintiff Counsel: We'll have a discussion off the record if you want and if you want we can go off the record now.

[Defendant Deposition, p. 56, ll. 15-25; p. 57, ll.1-10].

At Plaintiff's deposition on August 7, 2018, Defendant exhibited behavior unacceptable to

the practice of law and basic civility:

Defendant: What's your evidence?

Plaintiff-Witness: I took rings and jewelry off of my mother the day of her stroke. I was there when the ambulance was there. I took a gold chain that was like this (indicating).

Defendant: This is irrelevant.

Plaintiff Counsel: Whoa, whoa, whoa. He can answer the question.

[ECF 123, Ex A., p. 14, ll. 21-25; p. 15, ll. 1-3].

Defendant: Isn't it true that some unknown person could have entered the house, opening the locks and entering it without causing damage; yes or no? Isn't it possible that the locks could have been picked; yes or no?

Plaintiff-Witness: One in a million.

Defendant: So you're saying it is possible, yes?

Plaintiff-Witness: One in a million, yes.

Defendant: So it is possible. Isn't it true that you have no evidence, none whatsoever, to conclude that the items were not taken by an unknown burglar; yes or no?

Plaintiff Counsel: Don't answer this. You've asked it 18 different times. He's not answering. This is harassing and a waste of time.

Defendant: Isn't it true that you have no evidence that excludes yourself as the culprit who took the items; yes or no?

Plaintiff Counsel: Object to form.  I could have taken the items. If you are going to ask every possible machination.

Defendant: Shush.

Plaintiff-Witness: The only ones that had the key to the house before September 8th were me, you, where you got the key from me because you made a copy in the Home Depot and you used your debit or credit card for $3 and I couldn't believe you did that –

Defendant: Answer the – answer the question. Isn't it true that you have no evidence that excludes yourself as the culprit who took the items; yes or no?

Plaintiff-Witness: Excludes myself.

Plaintiff Counsel: Just note on the record that Mr. Peter – wait. I want the record to reflect that Mr. Peter Wizenberg is cutting off my client and refusing to allow him to finish his answer.

Defendant: It's a yes or no question. I'll repeat the question. Isn't it true that you have no evidence that excludes yourself as the culprit who took the items; yes or no?

Plaintiff-Witness: The only evidence –

Plaintiff Counsel: Object to form.

Plaintiff-Witness: -- I have is commonsense.

Defendant: Yes or no?

Plaintiff Counsel: Don't answer this. This is just – are you going to --

Defendant: Isn't it true –

Plaintiff Counsel: Wait, wait, wait.

Defendant: Next Question.

Plaintiff Counsel: Wait, wait, wait. Are you going to keep going on with this line of questioning?

Defendant: I'm going to do my job.

Plaintiff Counsel: No, that's –

Defendant: Shush, shush, shush.

Plaintiff Counsel: Don't – okay. Let the record reflect that Mr. Wizenberg who's a member of the Bar is shushing me, which is completely disrespectful, and I want the record to reflect that this is the first time in my 20 years of practice that a lawyer

has ever shushed me when I'm making an objection or a valid statement on the record.

[ . . . ]

Defendant: Isn't it true that you have no evidence that excludes yourself as the culprit who took the items; yes or no?

Plaintiff Counsel: Don't answer it.

Defendant: Isn't it true that you have no evidence that excludes your sons as the culprit who took the items; yes or no?

Plaintiff Counsel: Don't answer that. This is harassing.

Defendant: Isn't it true that you have no evidence that excludes anyone as the culprit who took the items; yes or no?

Plaintiff Counsel: Don't answer that. This is getting ridiculous and I'm about to end this deposition –

Defendant: Isn't it true --

Plaintiff Counsel: -- and go see the judge.

[ECF 123, Ex. A,  p. 19, ll. 2-25; pp. 20-22; p. 23, ll. 1-6].

Defendant: Isn't it true that you have no evidence to show that it's more likely that I took the items than that my wife took the items; yes or no?

Plaintiff Counsel: Object to form. I think this has kind of beaten to death. I mean, can I – he can answer this one last time, but I'm just curious, how many more questions do you think you have?

Defendant: I'm not done yet. I don't know how many. I have up to seven hours. Okay.

Plaintiff-Counsel: No, you don't.

Defendant: Shush, shush, shush.

Plaintiff-Counsel: Okay, that's it. We're done. We're done. We're done.

[ECF 123, Ex. A, p. 26, ll. 16-25; p. 27, ll. 1-5].

On August 7, 2018, Defendant's wife was also deposed.  [ECF 105].  According to

Plaintiff, Plaintiff questioned Defendant's wife for "approximately five (5) minutes" before

"De[fendant] thereafter insisted on asking wholly asking irrelevant and leading questions of his wife on 're-direct' for approximately one hour."  [ECF 105].

On August 8, 2018, Plaintiff filed a Motion to Compel Defendant to Produce a Privilege Log [ECF 101].  The Motion to Compel [ECF 101] states, "at [Defendant's] deposition conducted on August 6, 2018, Debtor testified of the existence of relevant and responsive documents in his possession that he withheld from producing to Plaintiff under the claim of attorney-client privilege."  [ECF 101, p. 2].  At no time did Defendant produce a privilege log, and Defendant "testified that he has practiced civil litigation during his career" but claimed not to know "what a privilege log is or what one looks like."  [ECF 101, p. 2].  Without a hearing, this Court granted Plaintiff's Motion to Compel Defendant to Produce a Privilege Log.  [ECF 102].  The Court's Order instructed Defendant to provide a privilege log "detailing which documents or other communications are protected under the attorney-client privilege" between Defendant and Sara Howeller, Esq.  [ECF 102].

On August 14, 2018, Plaintiff submitted his Supplemental Motion for the Imposition of Sanctions against the Debtor [ECF 105].  In this Supplemental Motion, Plaintiff alleged that during Defendant's wife's deposition, Plaintiff's counsel "questioned Defendant's wife for approximately five (5) minutes," whereas Defendant "insisted on asking wholly irrelevant and leading questions of his wife on 're-direct' for approximately an hour."  [ECF 105].  Plaintiff also alleged that "Debtor thereafter began questioning Plaintiff on a myriad of wholly irrelevant issues," such as childhood incidents and a 2004 domestic violence case.  [ECF 105].

On August 16, 2018, Plaintiff filed another motion for sanctions in its Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt of Court or Alternatively, to

Compel Defendant to Produce an Adequate Privilege Log and for Attorney's Fees [ECF 107] pursuant to 11 U.S.C. § 105(a).  This Court entered an Order to Show Cause [ECF 110], which directed Defendant (1) to provide Plaintiff with a privilege log that complies with the Court's Order Granting Motion to Compel [ECF 102] and Federal Rule of Civil Procedure 26(b)(5), and (2) to appear at the Order to Show Cause hearing on August 29, 2018.  [ECF 110].  On September 20, 2018, this Court issued an Order awarding attorney's fees to Plaintiff [ECF 129] pursuant to the Court's Order to Show Cause [ECF 110] due to Defendant's "failure to fully comply with the Order Granting Motion to compel [ECF 102] without justification."  On September 26, 2018, Defendant appealed stating that he "in complete good faith, was unaware (and had totally forgotten from Evidence class taken fifteen years prior) that Defendant was required to send Plaintiff a privilege log, and Defendant did not do so."  [ECF 142, p. 2].

On August 22, 2018, Plaintiff filed his Motion to Strike Defendant's Trial Exhibits and to Preclude Sara Howeller from Testifying at Trial and for Attorney's Fees and Sanctions [ECF 116].  The basis of ECF 116 was that Defendant emailed Plaintiff a trial exhibit register two weeks after Defendant's deposition—on August 19, 2018—listing previously undisclosed emails between Defendant and Sara Howeller as well as a MasterCard statement.  [ECF 116].

At the hearing on August 29, 2018, on the First Motion for Sanctions [17-23522-JKO, ECF 31], the Court first addressed the issue of Defendant claiming not to know about privilege logs: "[L]et's start with the issues relating to the privilege log.  I'm unhappy with you, Mr. [Peter] Wizenberg.  You hold yourself out as a lawyer, and you've been in practice for many years.  Not knowing what a privilege log is and what is required is shocking to me."  [17-23522-JKO, ECF 39, p. 3].  Next, Mr. Roher, Plaintiff's attorney, requested the Court exclude two evidence documents submitted by Plaintiff because Defendant did not produce them prior to Defendant's

deposition even though they were in existence when Defendant submitted his other evidence prior to the deposition; Mr. Roher claimed the documents were "intentionally withheld and untimely produced." [17-23522-JKO, ECF 37, pp. 6-7]. At that First Motion for Sanctions [17-23522-JKO, ECF 31] hearing, while addressing ECF numbers 107, 110, and 116, this Court stated, "I'm satisfied that what was done here by you, Mr. [Peter] Wizenberg, was, intentionally or not, gamesmanship, and the way to deal with discovery improprieties is to exclude all exhibits which were produced by you subsequent to the taking of your deposition." [ECF 154, p. 9, ll. 4-9].

On August 22, 2018, the Court granted ECF 116 in part (Defendant was precluded from introducing into evidence or utilizing any exhibits at trial that were not produced to Plaintiff prior to Defendant's August 6, 2018 deposition) and denied in part (Sara Howeller would not be prohibited from testifying at trial). [ECF 132]. The Court also awarded attorneys fees and costs incurred by Plaintiff against the Debtor. [ECF 132]. As of September 4, 2018, Plaintiff's attorney, Mark S. Roher, filed his Affidavit of attorney's fees. The Affidavit states that he billed Plaintiff a total of $2,880.00 "at the discounted rate of $300 per hour for a total hour of 9.6 hours . . . in connection with compelling Defendant to produce a privilege log and to strike Defendant's trial exhibits." [ECF 125]. Mr. Roher's normal hourly rate is $400.00. [ECF 125].

On October 1, 2018, Defendant filed a *132-page* Motion for Leave to Appeal Order Striking Defendant/Appellant's Trial Exhibits and Awarding Fees and Sanctions [ECF 149]. District Court Judge Cecilia Altonaga denied Defendant's Motion. [ECF 153].

On November 5, 2018, Defendant filed a *104-page* Motion for Partial Summary Judgment for Count 1 against Plaintiff [ECF 172] regarding the dischargeability of debt under 11 U.S.C. § 523(a)(6) claimed by Plaintiff. *See* [ECF 8]. In Defendant's Motion for Partial Summary

Judgment, Defendant (apparently unknowingly) demonstrates why it should not have been granted by presenting an abundance of disputed facts. [ECF 172].   Plaintiff filed a Motion [ECF 175] to Extend Time to File a Response to Defendant's Motion for Partial Summary Judgment, which was granted [ECF 178], but not before Defendant filed its Opposition Response [ECF 176] to Plaintiff's request to extend time.  In Defendant's Opposition Response [ECF 176], he disputed the length of an appropriate "Thanksgiving holiday" in trying to discredit Plaintiff's request for more time; this attempt seems, to this Court, unnecessary and uncivil.

On December 10, 2018, Defendant filed his Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment for Count I against Plaintiff [ECF 180].  In that filing, Defendant hurls insults and provides narration that is both lengthy and unhelpful to the litigation.

Defendant filed his Witness Statement Sworn Declaration of Fact of Sara Howeller, Esq. [ECF 188] on January 19, 2019.  Plaintiff then filed a Joint Pretrial Stipulation of Uncontested Facts [ECF 189] on January 22, 2019.  Plaintiff also filed a Motion to Extend Time to File Opening Statement [ECF 191] and it was granted [ECF 195], and Plaintiff filed his Opening Statement [ECF 194] on January 24, 2019.

On January 26, 2019, Plaintiff filed a Motion in Limine [ECF 198] as to Exhibits "F" and "G" Attached to Defendant's Opening Statement and Request for the Imposition of Sanctions for Violations of Two Court Orders.  The Motion in Limine was prompted by Defendant attaching to his *326-page* Opening Statement [ECF 190] two exhibits that were not produced prior to Defendant's deposition, which, Plaintiff asserted, brazenly violated the Court's Order Setting Trial [ECF 183].  The Order Setting Trial provides, "Pursuant to this Court's Order [ECF No. 132], Defendant is precluded from introducing into evidence or utilizing any exhibits at trial which were

not produced prior to Defendant's August 6, 2018 deposition." [ECF 183, p. 2]. In response, Defendant filed a 58-page Response Opposing Plaintiff's Motion in Limine and Request for the Imposition of Sanctions, etc. [ECF 201]. This Court, on January 28, 2019, granted Plaintiff's Motion in Limine in part (by striking Exhibits "F" and "G") and denied in part as to the request for sanctions. [ECF 203].

In the process of preparing for trial, Defendant also filed a Supplement to Witness Statement Sworn Declaration of Fact of Sara Howeller, Esq. [ECF 196] on January 26, 2019. Plaintiff objected based of relevance, speculation, inadmissible hearsay, the best evidence rule, and the presence of legal conclusions. [ECF 199]. This Court sustained Plaintiff's objection by Order [ECF 204] and struck the Supplement to the Witness Statement Sworn Declaration [ECF 196] stating:

> The Order Setting Filing Disclosure Requirements for Pretrial and Trial [ECF 3] provides the following information regarding sworn declarations:
>
> **8.b.** Each statement of fact shall be separate, shall be sequentially numbered, and shall contain only facts that are relevant and material to the contested issue before the Court, avoiding redundancies, *hearsay, and other obviously objectionable statements*. (Emphasis added).
>
> Sara Howeller's "Supplement to Witness Statement Sworn Declaration of Fact" [ECF 196] is rife with what it *must not* contain – irrelevant material, hearsay, and obviously objectionable statements.

This Court also denied Plaintiff's "137-page Opposition Response [ECF 202]" in its request for a trial continuance. [ECF 204].

### B. Trial

On January 29, 2019—the day of trial—Plaintiff was forced to object to two witness statements filed by Defendant the night before trial: the Witness Statement & Sworn Declaration of Fact of Peter Wizenberg [ECF 205], and the Witness Statement and Sworn Declaration of Fact

14

of Defendant's wife, Pantanassa Wizenberg [ECF 206].  Defendant filed ECF 205 and ECF 206 at 10:05 p.m. and 10:11 p.m., respectively, the *night before* trial.  Plaintiff's objections to the two witness statements [ECF 207, 208], were sustained.  [ECF 209].   This method of filing documents just hours before trial is utterly unprofessional, and it required Plaintiff and the Court to scramble. The Court found itself obliged to adjudicate motions on the morning of trial, which is why the Court entered ECF 209 at 9:37 a.m., even though the trial was supposed to begin at 9:30 a.m.  This Court sustained Plaintiff's objections, and struck Peter Wizenberg and Pantanassa Wizenberg's witness statements.  [ECF 209].

In Court, at trial, Defendant—when asked if he had his exhibit register[4]—stated that he did not have a register because his printer broke, and that he "expect[ed] [the Court] to accept the original copy of the deposition" and witness statements without an exhibit register.  [ECF 260, p. 9, ll. 2-17].  Upon the sustained objection of Plaintiff, the transcript offered by Defendant was deemed inadmissible since the transcription's deponent, Howard Wizenberg, was present at trial and, thus, was available for cross-examination.  [ECF 260, p. 10, ll. 16-18].

This Court was forced to orally reprimand Defendant.  Specifically, at trial, Defendant continuously, bizarrely, and brazenly ignored clear rulings by the Court and attempted to coach his witness, Sara Howeller, Esq., while she was on the witness stand.

*Howard Wizenberg's Witness Examination*

---

[4] Exhibit registers are required at trial pursuant to Local Rule 9070-1, which states:

> Unless directed by the court, exhibits shall not be filed with the clerk of court. Exhibits shall be accompanied by the Local Form "Exhibit Register", and copies of the register and all exhibits should be submitted for each party and the judge. Unless ordered otherwise and except where the party receiving the exhibits is appearing pro se in a case or proceeding, parties may serve exhibits in electronic format. At the conclusion of the hearing or trial, the completed Exhibit Register will be filed by the courtroom deputy on the case or adversary docket.

At trial, during cross-examination of the Plaintiff:

> Defendant-Examiner: Isn't it true that you knew that I would—I had durable power of attorney over my mother while she was unconscious?

> Plaintiff-Witness: It is true you told me you weren't going to pull the plug until everybody in the family agreed, and then the next day you decided to pull the plug.

> Defendant-Examiner: Objection. Isn't it true you knew—

> Court: Mr. [Peter] Wizenberg, you can't object to an answer. You may not like it, but if you want to ask another question, you can ask another question, but you can't object to an answer.

[ECF 260, p. 35, ll. 8-18].

> Defendant-Examiner: Do you have any evidence that you didn't take the items?

> Plaintiff Counsel: Objection, your Honor.

> Court: Sustained.

> Defendant-Examiner: Do you have evidence ---

> Court: Mr. [Peter] Wizenberg, the evidence the plaintiff produces is the evidence the plaintiff produces. You have asked if there is other evidence.

> Defendant-Examiner: I ---

> Court: The representation that's been made by Mr. Roher [Defendant's counsel] is that the evidence that is presented is in the exhibit register and the testimony of Mr. Howard Wizenberg. You may argue to me at whatever point is appropriate whether that evidence is sufficient, but you don't need to browbeat the plaintiff on the point that there is no evidence other than that which Mr. Roher has specified exists.

> Defendant-Examiner: So ---

> Court: Move along.

> Defendant-Examiner: There is no – nothing that corroborates –

> Court: That's enough –

> Defendant-Examiner: -- the testimony?

> Court: -- Mr. [Peter] Wizenberg.

> Defendant-Examiner: Okay. All right. So let's move on to another topic.

[ECF 260, p. 45 ll. 10-25, p. 46, ll. 1-15].

> Defendant-Examiner: Do you have evidence that I accepted a trust.

16

Plaintiff Counsel: Object to relevance, and I think --

Court: Sustained. I've already ruled on the question, Mr. Wizenberg, the issue of whether there was a trust, or you were merely acting as personal representative prior to the creation of a trust, is irrelevant because the fiduciary obligations that you owed as personal representative are identical under Florida law to those obligations which you would have owed as a trustee of an expressed trust.

Defendant-Examiner: However, your Honor –

Court: Don't argue with me.

Defendant-Examiner: So, isn't it true that the trust had no assets?

Plaintiff Counsel: Judge ---

Court: Sustain the objection. Stop it. I've already ruled that whether there was a trust or not is not a relevant question for purposes of a 523(a)(4) complaint.

Defendant-Examiner: How could I have fulfilled my duty to provide you an annual trust accounting if there were no assets in the trust?

Plaintiff Counsel: Judge ---

Court: Mr. [Peter] Wizenberg, this is for me, sir, very frustrating because I have ruled on a point of law, and you seek apparently to ask questions which the point of law which I have ruled upon render irrelevant. Stop asking them.

Plaintiff Counsel: Your Honor, I just, for the record, I'd like to remind the Court, I'm sure the Court is well aware, but just for the record Mr. [Peter] Wizenberg is an attorney. He practiced before this Court. So I don't believe he deserves any sort of leeway that an otherwise pro se debtor would possibly deserve from your Honor, and I know you've been very patient, but it's extremely frustrating for me, and your Honor has to – and, your Honor, my client has to pay me to sit through these questions, and I object to these questions.

Court: I understand your frustration. Mr. [Peter] Wizenberg, within the ambit of the rulings I have already made, please try to restrict your question to those which are relevant to the issues in the case.

[ECF 260, p. 47, ll. 24-25; p. 48, ll. 1-25; p. 49, ll. 1-22].

Defendant-Examiner: But you simultaneously allege that I – that it's unaccounted for?

Court: Asked and answered.

Defendant: Ok.

Court: And, Mr. [Peter] Wizenberg, this may be my last warning. Don't yell into the microphone. It offends the system. It will blow up the recording system, in which case you may end up with no transcript of this hearing.

[ECF 260, p. 59, ll. 16-24].

Defendant-Examiner: Isn't it true that you don't know that these items were sold at the estate sale in August 2011?

Court: Mr. Howard Wizenberg – Mr. Peter Wizenberg – make whatever objection you're going to, Mr. Roher, because I heard you starting.

Plaintiff Counsel: I'm sorry, your Honor, I really want to get this – your Honor, at this point the defendant has repeatedly violated your oral rulings and instructions, and at this point I'd like to request the imposition of some type of sanction, because we're never going to get done at this rate, and this was just – well, I'm not going to add anymore.

Court: All right. Mr. Peter Wizenberg, the testimony is that of the items on exhibit 3, and photographed on exhibit 10, Mr. Howard Wizenberg has no clue what happened to those items. There is an exhibit at exhibit 5, report of an estate sale, at which he was not present, and which was prepared by someone employed by you. I will not entertain any further questions about what happened to any of the stuff on exhibit 3 or 10 after June of 2011, period, full stop.

Defendant-Examiner: Your Honor, the reason I bring this up is Mr. Silas Pierce's accounting for what was sold at the estate sale, it does specifically list items that I bought, but the balance of all the items that were sold to the public at the estate sale, he does not list those items.

Court: Mr. Peter Wizenberg, and I'm going to say this and then I'm going to take a break, Mr. Howard Wizenberg's testimony is he doesn't know what happened to the stuff. That's it. There is no further discussion –

Defendant-Examiner: May I testify?

Court: -- of the stuff.

Plaintiff Counsel: Yes.

Court: You may testify when it's your time to put on your case in chief.

Defendant-Examiner: Okay.

[ECF 260, p. 62, ll. 8-25; p. 63, ll. 1-20].

*1. Sara Howeller, Esq.'s Witness Examination*

During the examination of the Defendant's witness, Sara Howeller, Esq., who is the Defendant's probate attorney, the Defendant tried to coach the witness:

> Defendant-Examiner: Did I heed your advice on how to be personal representative and fulfill my duties? Did I heed your advice or did I go against your advice?
>
> Plaintiff Counsel: Leading.
>
> Court: Sustained. Mr. [Peter] Wizenberg, you're a lawyer, you're pro se, but you're a lawyer. Ask a lawyerly question.
>
> Defendant-Examiner. Okay.

[ECF 260, p. 118, ll. 17-24].

> Plaintiff Counsel: Ms. Howeller, can you show me in the trust documents, or the will, where Peter Wizenberg was allowed to let his wife take anything she wanted from the estate, both before and after his mother died? Can you show me where it says that he was allowed to do that?
>
> Defendant-Examiner: Durable power of attorney.[5]
>
> Court: Mr. [Peter] Wizenberg, if you do that again I'm going to throw you out. You may not interject and offer answers to a witness who is on the witness stand. You should be ashamed of yourself as a lawyer, sir.

[ECF 260, p. 125, ll. 8-19].

> Court: Well after the knowledge that Ann Wizenberg was dead --
>
> Witness: Yes, sir.
>
> Court. –Mr. [Peter] Wizenberg's testimony was that his wife loaded up the van, she also knew of the death of Ann Wizenberg, and filled it with stuff and took to be her own. Is she authorized under any document?
>
> Witness: Not in my opinion if she was taking it to be her own property.
>
> Court: She was. Well, that was the testimony of Mr. Wizenberg, that she loaded up the van –
>
> Defendant: Before her death.
>
> Court: Mr. [Peter] Wizenberg, if you interrupt like that again, I will throw you out of the courtroom.

---

[5] Mr. Peter Wizenberg, seated at Counsel's table, answered the question that Mr. Roher, Plaintiff's counsel, asked of Ms. Howeller, who was on the witness stand. This is unconscionable behavior from a lawyer.

Clerk: Do you want me to get the marshals?

Court: I'm sorry?

Clerk: Do you want me to get the marshals in here?

Court: No, I think I will resist for the moment getting the marshals in here . . . .

[ECF 260, p. 131, ll. 18-25; p. 132, ll. 1-13].

Plaintiff Counsel: I don't want you to add -- I don't want you to add hypotheticals. I'm asking, based on the fact that he, that Mr. Wizenberg testified that he sat back, did nothing, while his wife loaded up whatever she wanted into the van, because he doesn't really care about the stuff, he's a reader, he only -- he's a very minimalist type of guy, but he sat back, with full acquiescence, full knowledge that his wife was just loading up the car, loading up the car, loading up the car, and did nothing about that, how is that not a breach of fiduciary duty?

Defendant: They're gifts.[6]

Witness-Sarah Howeller: Well, I guess it depends on what she took, but if they were things that belonged to the estate, or to Mrs. Wizenberg --

Plaintiff Counsel: He's testify[ing] again, Judge. He's coaching the witness, and this is ridiculous.

Court: It is very ridiculous, and is causing me to draw adverse inferences, Mr. [Peter] Wizenberg. The behavior of a lawyer, in this case you are acting as your own lawyer, and blatantly attempting to coach a witness in the course of a trial as to what she should testify to causes me to think very hard about 28 U.S.C. Section 1927, and the vexatious behavior of an attorney and –

Defendant: I apologize.

Court: -- I have instructed you three or four times about this, Mr. [Peter] Wizenberg. It is infuriating to me, and incomprehensible that a lawyer cannot take such instructions and abide by them.

[ECF 260, p. 136, ll. 4-25; p. 137, ll. 1-6].

### *C.  Post-Trial*

---

[6] Again, Mr. Peter Wizenberg, while seated at Counsel's table, answered the question that Mr. Roher, Plaintiff's counsel, asked of Ms. Howeller, who was on the witness stand. After the Court had just reprimanded Mr. Peter Wizenberg, he was brazen enough to do it again.  Mr. Peter Wizenberg showed no respect for the Court and no professional courtesy to Plaintiff's counsel.  This behavior again unreasonably extended the length of the trial.

On February 1, 2019, Plaintiff filed a Renewed and Supplemental Motion [ECF 215] for Attorney's Fees as an Appropriate Sanction for Defendant's Conduct as an Appropriate Sanction for Defendant's Conduct throughout this Case for excessive costs pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 1927.  Plaintiff, in his prayer for relief, is asking for $24,880.00.  [ECF 215].  This amount, when divided by Plaintiff's counsel's discounted rate of $300 per hour, comes out to about eighty-three (83) hours' worth of work.  This is an absurd number of hours for this relatively simple case, but the Court realizes that Mr. Roher had to put in that work because Mr. Peter Wizenberg's unreasonable and vexatious actions in multiplying these proceedings.

On February 5, the Court entered its Memorandum Opinion [ECF 218] and Judgment in Favor of Plaintiff Howard Wizenberg on Counts I and II of the Amended Complaint [ECF 219].

In pertinent part from the Memorandum Opinion [ECF 218]:

## 11 U.S.C. § 523(a)(4) and the "Gift"

Pursuant to 11 U.S.C. § 523(a)(4), a debt is excepted from discharge if is a [debt] for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.  Acting pursuant to the durable power of attorney and while his mother was still alive, Peter Wizenberg instructed his wife to take whatever she wanted from his mother's house.  She took items from the home, the exact description and value of those items are unknown to this Court.  The durable power of attorney limits the amount which can be gifted away such that, among other things, if gifts are made to a group of individuals which includes the agent (Peter Wizenberg), the amount of such gift shall be the greater of $5,000 or 5% of the aggregate value of the principal's assets effected by the power of attorney at the date of the gift.  This Court does not know, and does not make a determination regarding the value of the items taken from [the] home by Peter Wizenberg's wife.

Under applicable Florida Law, personal property acquired by a couple during a married is presumed to be acquired by tenants by the entirety.  When Peter Wizenberg advised his wife that she could take anything she wanted, he was actually making a gift to himself at the same time.  As a result, if what Ms. Wizenberg took from the mother's home had a value greater than $5,000, Mr. Wizenberg in granting that gift was exceeding his authority pursuant to the durable power of attorney.  Furthermore, if anything was taken *after* the death of Ann Wizenberg that gift was unauthorized by the durable power of attorney and was not

authorized pursuant to any other instrument including the last will and testament of Ann Wizenberg as to which Peter Wizenberg had not yet become personal representative.

## 11 U.S.C. § 523(a)(6) and the Secret Estate Sale

Pursuant to 11 U.S.C. § 523(a)(6), a debt is excepted from discharge if it is for willful and malicious injury by the debtor to another entity or to the property of another entity.

It is clear that Peter Wizenberg acted in a manner while holding power of attorney and while he was the personal representative that was designed to ensure that Howard Wizenberg got as little from Ann Wizenberg's estate, and the amount he received was minimized to the greatest extent possible. The Court finds that there is significant evidence of such a scheme because Peter Wizenberg purposefully failed to notify Howard Wizenberg and his sons of the estate sale. Peter did not want Howard to get anything from Ann Wizenberg's estate, *even if he had to pay for it*. The decision to exclude Howard and his sons from the estate sale is evidence of malice, and to the extend that Howard was deprived of property as a result of that, it is clear that such deprivation was willful, and done with malice.

In pertinent part from the Final Judgment [ECF 219]:

2) On Count I of the Amended Complaint [ECF 8], whatever debt the Circuit Court for Seminole County determines that Defendant Peter Allan Wizenberg owes to Plaintiff Howard Wizenberg as a result of the secret estate sale will be held non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

3) On Count II of the Amended Complaint [ECF 8], whatever debt the Circuit Court for Seminole County determines that Defendant Peter Allan Wizenberg owes to Plaintiff Howard Wizenberg relating to any property purportedly transferred to Peter Wizenberg's wife purportedly pursuant to a power of attorney (as described in detail in the Memorandum Opinion) will be held-non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).[78]

---

[7] One day later, on February 6, 2019, Peter Wizenberg filed his Notice of Appeal [ECF 221] relating to the Memorandum Opinion [ECF 218] and Judgment [ECF 219]. On February 17, 2019, Plaintiff's attorney Mark Roher filed a Motion to Clarify [ECF 234] the Judgment [ECF 219]. On February 21, 2019, Peter Wizenberg's appeal was dismissed [ECF 239] via standard order from the clerk's office for failure to timely file the designation of items for the record or its statement of the issues as required by Bankruptcy Rule 8009 and Local Rule 8009-1(A), which indicates that this court **shall** dismiss the appeal as authorized by District Court Local Rule 87.4(c) when the appellant fails to timely file a designation of record or statement of the issues. (Emphasis added).

[8] Peter Wizenberg's first appeal was dismissed at 12:09 p.m. on February 21, 2019 [ECF 239]. The Court, now with clear subject matter jurisdiction, granted the Motion to Clarify [ECF 234] by Order [240] at 12:10 p.m. Peter Wizenberg filed his second Notice of Appeal [ECF 242], relating to the clerk's dismissal order for failure to follow local rules [ECF 239] at 12:36 p.m. That appeal is now before Judge Rodolfo A Ruiz, 19-cv-60466-RAR and both sides have filed briefs as of May 10, 2019.

On March 19, 2019, one day before the hearing on the Renewed Motion for Sanctions [ECF 215], Defendant filed his Response to Plaintiff's Renewed Motion for Sanctions [ECF 255] in violation of Local Rules.[9]  Later that same day, Plaintiff's attorney Mark Roher filed his Reply [ECF 256] to Defendant's Response.  On March 20, 2019, the Court conducted a hearing on the Renewed Motion for Sanctions [ECF 215] and heard argument from Peter Wizenberg and Plaintiff's attorney Mark Roher.  Since the Final Judgment in this case has now been entered and the life of the case has been observed, the issue of sanctions under § 1927, which was initially brought up ten (10) months ago, is now ripe for this Court to consider.

## II.     Application of Controlling § 1927 Law to the Facts of this Case

To impose sanctions under 28 U.S.C. § 1927 there are three elements that must be satisfied. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

First, the person whom sanctions are sought against must be an attorney; second, the court considering the imposition of sanctions must be a court of the United States; and, finally, the conduct of the attorney against whom sanctions are sought must have "unreasonably and vexatiously" multiplied the proceedings.  28 U.S.C. § 1927.

As to the first element, there is no dispute that Peter Wizenberg, a pro se defendant, is an attorney who represented himself throughout this adversary proceeding.    Peter Wizenberg is a

---

[9] Local Rule 5005-1(F)(1) states that: Memoranda, affidavits and other papers intended for consideration at any hearing already set before the court, shall be filed and served so as to be received by the movant and the court not later than 4:30 p.m. on the second business day prior to the hearing, or the papers submitted may not be considered at the hearing.  The hearing for March 20, 2019, was set by Notice [ECF 216] on February 5, 2019.

current member of The Florida Bar (Florida Bar No. 34500) who has practiced in this Court in the past. *See* [ECF 215, p. 1].[10]  In fact, Defendant has practiced in this Court with at least forty (40) different cases stemming from 2009 to the present.  Even if Defendant were a *non-attorney pro se* party, the Court would still consider sanctions here.  *See In re Ocean 4660 LLC*, 569 B.R. 850, 874-76 (Bankr. S.D. Fla. 2017) (holding that 28 U.S.C. § 1927 can apply to *pro se* litigants under the circumstances set forth therein).

Second, this Court has already determined that a bankruptcy court is a "court of the United States."  *See Ocean 4660*, 569 B.R. at 874-76 (providing a thorough discussion of why a bankruptcy court is a "court of the United States").

> [The] ability to award sanctions under 28 U.S.C. § 1927 flows from [a bankruptcy court's] jurisdictional relationship with the district court.  The district courts are clearly "courts of the United States," and bankruptcy courts operate as units or divisions of that court.

*Id*. at 876 (quoting *In re Lawrence*, No. 97-BKC-AJC, 2000 WL 33950028 (Bankr. S.D. Fla. 2000)); *In re Moran Lake Convalescent Ctr., LLC*, No. 10-43405-MGD, 2012 Bankr. LEXIS 465 (Bankr. N.D. Ga. 2012); *see also In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) (holding that bankruptcy courts have the power to assess sanctions pursuant to their inherent powers).  Furthermore, since this case took place in this Bankruptcy Court, this Court is best suited to make a determination of whether sanctions should be imposed.  *See generally In re Lisse*, Nos. 18-1866 & 18-1889 (7th Cir. Apr. 1, 2019) ("Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power."  ((citing *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082, at *20 (7th Cir. 2018) (quoting *Boyer v. BSNF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016)))).  However, if the District Court on appeal determines otherwise, this Order should be treated as a Report and Recommendation pursuant to the provisions of Local

---

[10] FLORIDA BAR, https://www.floridabar.org/directories/find-mbr/ (last visited April 29, 2019).

Rule 87.2(c) of the United States District Court for the Southern District of Florida, and the District Court should impose sanctions pursuant to 28 U.S.C. § 1927 against Defendant.

Having determined that § 1927 is applicable to Peter Wizenberg and that this Court has the statutory power to impose sanctions pursuant to § 1927, the analysis turns to whether Peter Wizenberg's conduct multiplied the proceedings in an unreasonable and vexatious manner. Conduct violating § 1927 has three requirements: "(1) the litigant must engage in unreasonable and vexatious conduct, (2) the unreasonable and vexatious conduct must multiply the proceedings, and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings." *Ocean 4660*, 569 B.R. at 876 (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).

The Eleventh Circuit has "consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). Bad faith is determined on an objective—*not* a subjective—basis. *Amlong*, 457 F.3d at 1190 ("[I]t is clear from the statutory language and the case law that for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct."). An attorney's conduct is "'tantamount to bad faith' when he 'either carelessly or deliberately' covered up evidence." *Id.* at 1191 (quoting *Malautea v. Suzuki Motor Co.*, 987 F.3d 1536, 1544 (11th Cir. 1993)). Moreover, "a determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.

2003); *see also Amlong*, 457 F.3d at 1191 ("[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently.").

## III.    Defendant-Attorney's Conduct

Whether Peter Wizenberg unreasonably and vexatiously multiplied proceedings is determined by objectively reviewing his conduct.   *See Amlong*, 457 F.3d at 1190. Throughout the course of this case, Defendant, Peter Wizenberg, has:

- Submitted to the Court extremely long, repetitive, and objectively pointless pleadings, which is partially illustrated by the fact that five (5) of Peter Wizenberg's pleadings submitted between March 13, 2018, and March 30, 3018, total 244 pages. Not only were the pleadings unnecessarily and unreasonably lengthy, they included insults, unnecessary narrative, and threats of appeal.

  - *See* **Appendix A: A Sample of Malicious, Vexatious, and/or Objectively Pointless and Irrelevant Pleadings Filed by Peter Wizenberg.**

  - *See also* **Appendix B: a true and correct copy of Peter Wizenberg's Motion for Reconsideration of Order and Motion to Vacate Order Denying Defendant's Motion for Summary Judgment [ECF 68].**

- Frivolously moved to dismiss a count regarding dischargeability of a debt under Bankruptcy Code section 523 due to this Bankruptcy Court's alleged lack of subject matter jurisdiction, which Peter Wizenberg must know is a frivolous motion as he

has practiced in this Court and holds himself out a "South Florida Bankruptcy Attorney."[11]

- Acted contemptuously in depositions both towards Plaintiff, Howard Wizenberg, and Plaintiff's attorney, Mark S. Roher.

- Wasted the Parties time by asking redundant deposition questions (Defendant asked Plaintiff double negative questions over twenty times in Plaintiff's deposition, such as "Isn't it true that you have no evidence, none whatsoever, to conclude that the items were not taken by an unknown burglar?" Defendant also asked at least twenty questions about whether various hypotheticals were possible, such as "Isn't it possible that the locks could have been picked?").

- Intentionally dragged out and blatantly overscheduled depositions in an obvious attempt to increase attorney's fees for Plaintiff by, for example, insisting that Howard Wizenberg sit for two days of deposition when in fact the deposition only lasted one hour and six minutes.[12]

- Failed to make pre-trial evidentiary disclosures, and waited until after he was deposed to submit documents to Plaintiff.

---

[11] WIZENBERG, ATTORNEY & COUNSEL AT LAW, P.A., http://wizenberglaw.com (last visited April 22, 2019), in which he represents that Wizenberg, Attorney and Counselor at Law, P.A. is a boutique firm and can handle a large variety of bankruptcy services, including the following:

Chapter 7 Liquidations;
Chapter 13 Repayment Plans;
Home Foreclosure Defense;
Debt Restructuring;
Collection Defense; and
Most other legal matters facing debtors.

The website also represents that Peter Wizenberg is able to assist clients in other civil litigation matters.

[12] Plaintiff attorney Mark Roher at the hearing on March 20, 2019. *See also* ECF 256, ex. E.

- Acted objectively in bad faith, even prompting this Court to say that Plaintiff's behavior was "gamesmanship."

Although Peter Wizenberg has stated on the record that he believes his actions have been "in good faith and based in law and fact,"[13] it holds no weight in this objective-lens analysis.  *See Amlong*, 457 F.3d at 1190 ("[F]or purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct.").  Based on Peter Wizenberg's actions listed above and throughout this case, this Court finds that Peter Wizenberg has acted in bad faith. Peter Wizenberg has suffocated the Court's docket with painfully long and frivolous pleadings, many of which are based in neither law nor fact, including his motion [ECF 62] claiming this Bankruptcy Court did not have subject matter jurisdiction to determine the dischargeability of a debt.  *See* 28 U.S.C. § 157(b)(2)(I).[14]  Bad faith can also be found by his withholding documentary evidence he claimed to be relevant prior to and throughout his deposition, and eventually submitting such documents some two weeks after his Deposition.   In depositions of other witnesses, Peter Wizenberg inefficiently, continuously, needlessly and rudely carried on repetitive questions triggering the same objections repeatedly; in contrast, Plaintiff's counsel expressly stated his intention not to make transcripts "very long."  The effort to prolong depositions began prior to the actual events; for example, Defendant told Plaintiff that he would need multiple days to depose Plaintiff, which—based on the nature of the case, the amount dispute, and the facts present—was a grossly unnecessary and unreasonable projection.  Although Defendant was representing himself,

---

[13] Defendant Peter Wizenberg at the hearing on March 20, 2019.
[14] 28 U.S.C. § 157 (b)(1) states that bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection a of this section, and may enter appropriate orders and judgment, subject to review under section 158 of this title.  28 U.S.C. § 157 (b)(2)(I) indicates that determinations as to the dischargeability of particular debts are "core proceedings."

he is nonetheless an attorney with a duty to act appropriately both in this Court and in ancillary proceedings.

Whether a claim is dischargeable is wholly within this Court's jurisdiction and is routinely brought before this Court for determination.  At the end of the day, this case should have taken a fraction of the time and energy spent by not only the Parties, but by this Court.  More than fourteen months and over 250 docket entries later, this Court can say that the proceedings have multiplied as a result of Peter Wizenberg's unreasonable and vexatious conduct, and Plaintiff's counsel's bill for services rendered is a direct result of the excess proceedings.  *See* [ECF 125, 258].  Therefore, this Court, having considered the life of the case and Defendant's conduct throughout, now finds it appropriate to sanction Defendant pursuant to 28 U.S.C. § 1927.

Specifically, the Court has reviewed the invoices provided by Plaintiff's attorney Mark Roher [ECF 215, ex. E].  The Court has analyzed which billable hours are directly attributable and were reasonably incurred because of Peter Wizenberg's unreasonable and contemptuous behavior, and has reproduced those hours below, with the last column representing this Court's determination of the dollar amount of the time needlessly incurred which is now recoverable as a sanction against Peter Wizenberg pursuant to 28 U.S.C. § 1927.  Invoice items that would have been incurred regardless of Peter Wizenberg's behavior are omitted.

| Date | Description | Billable Hours | Fee at $300/hr | Amount Recoverable as a 28 U.S.C. § 1927 Sanction |
|------|-------------|----------------|----------------|---------------------------------------------------|
| 2/26/2018 | Prepare Rule 9011 Motion | 1 | $300 | $300 |
| 3/25/2018 | Prepare and file Motion to strike affirmative defenses | 1.5 | $450 | $450 |

| | | | | |
|---|---|---|---|---|
| 3/29/2018 | Prepare motion to strike amended affirmative defenses and motion for summary judgment on count 2 | 2 | $600 | $450<br>3/4 of fee recoverable |
| 4/21/2018 | Prepare order from April 18 hearings | 0.5 | $150 | $150 |
| 6/5/2018 | Review of renewed motion to dismiss adversary proceeding and prepare motion for sanctions | 2.5 | $750 | $750 |
| 6/15/2018 | File motion to direct depositions to be conducted at courthouse | 0.5 | $150 | $150 |
| 6/19/2018 | Prepare for and attend hearings on 28 USC 1927 motion and debtor's other motions | 3.0 | $900 | $600<br>2/3 of fee recoverable |
| 7/12/2018 | Emails with Debtor and file motion to compel | 0.7 | $210 | $210 |
| 7/12/2018 | Numerous emails with debtor and with chambers regarding scheduling depositions | 1.0 | $300 | $300 |
| 7/19/2018 | Numerous emails with debtor and with chambers regarding scheduling depositions | 1.0 | $300 | $300 |
| 8/6/2018 | Prepare for and conduct deposition of | 6.8 | $2,040 | $1,020<br>1/2 of fee recoverable |

| | defendant and meet with client | | | |
|---|---|---|---|---|
| 8/7/2018 | Attend depositions | 4.0 | $1,200 | $600 1/2 of fee recoverable |
| 9/4/2018 | Prepare and file affidavit of fees and costs | 0.3 | $90 | $90 |
| 10/9/2018 | Review of motions for leave to appeal and research | 1.5 | $450 | $450 |
| 10/17/2018 | Review of reply DE 164 | 0.3 | $90 | $90 |
| 10/24/2018 | Attend hearings | 2.0 | $600 | $300 1/2 of fee recoverable |
| 11/30/2018 | Prepare response to motion for partial summary judgment | 1.0 | $300 | $300 |
| 1/26/2019 | Prepare motion in limine and for sanctions | 0.1 | $30 | $30 |
| 1/27/2019 | Prepare objection to Sara Howeller's sworn statement | 0.8 | $240 | $240 |
| 1/29/2019 | Prepare for and attend trial | 10 | $3,000 | $1,000 1/3 of fee recoverable |
| 3/19/2019 (ECF 256, ex. F) | Prepare reply to response to motion for sanctions | 3.0 | $900 | $900 |
| 3/20/2019 (ECF 2580 | Actions taken on March 19 and 20, 2019[15] | Unknown | $1,170 | $1,170 |

---

[15] ECF 258 purports to attach "Invoice No. 506 in the amount of $1,170," but there is no invoice attached. Nevertheless, the total costs requested in ECF 258 (and purportedly on Invoice No. 506) shall be fully recoverable as a sanction pursuant to 28 U.S.C. § 1927, as the only work done was necessarily related to the issue to 28 U.S.C. § 1927 sanctions [ECF 215] which finally came on for hearing on March 20, 2019.

Total Costs Recoverable as a 28 U.S.C. §1927 sanction: **$9,850**

Upon consideration, it is **ORDERED:**

1. The Renewed Motion for Sanctions [ECF 215] is **GRANTED**.

2. As a sanction pursuant to 28 U.S.C. § 1927, Peter Wizenberg is **DIRECTED** to pay
   $9,850 to Plaintiff's attorney Mark Roher within 14 days of the date of this order.

### 

Copies furnished to:

All parties in interest.

# APPENDIX A

## A Sample of Malicious, Vexatious and/or Objectively Pointless and Irrelevant Pleadings Filed by Peter Wizenberg

As a preliminary matter, the Court is appalled with the behavior of Defendant Peter Wizenberg, an attorney licensed to practice in the State of Florida, throughout this case. But beyond the in court, in deposition, and out of court behavior, the length and content of many filings from the Defendant were malicious, vexatious, and altogether pointless in a way that increased the workload exponentially not only for Plaintiff's Attorney Mark Roher, but for this Court. The Court takes very seriously its obligation to read and dutifully contemplate every filing, and has accordingly slogged through every single page. Unfortunately, it is clear that from the beginning that Defendant Peter Wizenberg only had one goal in mind: extend this litigation as much as possible in an effort to drain his brother's financial resources. In the process, Defendant Peter Wizenberg has debased himself as an attorney.

The below is merely *some selected portions* of the filings from Mr. Peter Wizenberg that this Court finds to be either vexatious, malicious, or such an irrelevant or objectively pointless statement as to multiply these proceedings in an unreasonable manner. This following list is by no means an exhaustive catalogue of misconduct, but meant only to be illustrative.

### ECF 36 Defendant's Motion for Summary Judgment Against Plaintiff (67 pages)

7. While the plaintiff does indeed make an allegation of "theft" against defendant, the plaintiff pleads no facts whatsoever in his First Amended Complaint that *support* his mere allegation of theft. None. Zip. Nada. Rien. Zero. Gornisht.

8. Absolutely no evidence whatsoever is proffered or adduced in support of plaintiff's allegation of willful and malicious injury, or the mental states required to sustain an allegation of bothe [sic] willful and malicious injury. None. Zip. Nada. Rien. Zero. Gornisht.

34

14. It is noteworthy, that plaintiff has a very long history of making false allegations. One incredible example that can be adduced with documentation is his not credible allegation of "domestic violence" against his octogenarian mother, Ann Wizenberg, in 2005. Plaintiff is a tall, large, and very strong man, with a history of domestic violence against others, and his octogenarian mother was short, sickly with numerous medical problems, had trouble walking, and was very frail. A copy of the docket evidencing plaintiff's incredible allegation against his mother is attached hereto as Exhibit "B"

19. During the period of Ann Wizenberg's hospitalization and hospice stay, plaintiff Howard Wizenberg repeatedly came to the hospital and hospice and screamed at defendant, Peter Wizenberg, that he was a "murderer" for following his mother's frequently expressed wishes that if she were incapacitated and the doctors' stated that there was no hope of recovery, that she be allowed to die. Her wishes were stated in writing, and also were very often verbally expressed. Plaintiff Howard Wizenberg stated that he wanted his mother to be kept alive so that she would continue to receive monies monthly because she would still be alive, and he would inherit half those monies

20. While plaintiff Howard Wizenberg was engaging in extreme, vehement, nearly violent, animus, enmity, and hatred directed at defendant Peter Wizenberg, defendant Peter Wizenberg, could have, while Ann Wizenberg was still alive and incapacitated, lawfully gifted items of her personal property to anyone. Incredibly, plaintiff, Howard Wizenberg alleges that Peter Wizenberg, a licensed attorney, instead of lawfully gifting items during his mother's incapacity, foolishly waited for her to die, and then foolishly illegally stole items from the estate.

21. During Ann Wizenberg's hospitalization and hospice stay up to her death, defendant, Peter Wizenberg slept, every night overnight by his mother's bedside, and was with her almost virtually around the clock. Defendant's wife, Pantanassa Wizenberg, had to go to the home of Ann Wizenberg, to take our dog out for walks, where she encountered plaintiff Howard Wizenberg, illegally trespassing along with sister Genia Silverberg, (who was purposefully left out of Ann Wizenberg's will. (There was extreme enmity between mother and daughter for decades. Mother turned out to be totally in the right.) ransacking the house for things to steal. Pantanassa Wizenberg also, on or about Wednesday, September 8, 2010, three days before my mother's death, encountered plaintiff Howard Wizenberg having hired a locksmith to illegally change the locks on Ann Wizenberg's house. Howard Wizenberg and Genia Silverberg were frequently in and out of the house in the weeks and days prior to their mother's death, because Howard Wizenberg had the keys, and Pantanassa Wizenberg and defendant Peter Wizenberg were at the hospital and hospice. Plaintiff Howard Wizenberg had keys to Ann Wizenberg's house, and so, Peter Wizenberg, acting within the scope of his authority as Durable Power of Attorney, and fulfilling his fiduciary duty to protect his mother's assets, from the hospice telephoned a different locksmith to change the locks on his mother's house, to prevent plaintiff Howard Wizenberg from stealing property in the future, while Pantanassa Wizenberg paid for the locksmith's services. A copy of the locksmith's receipt is attached hereto as Exhibit "E"

22. The aforementioned events add background to understand the horrendous human drama that has played out culminating in plaintiff's breathtakingly diabolical and false and audacious "big lie" technique of filing thoroughly false, malicious, frivolous suits against his brother, defendant, Peter Wizenberg, with absolutely no evidentiary basis whatsoever, just a claimed and feigned

"assumption"! There are many more horrendous facts about plaintiff's atrocious behavior, not mentioned herein.[16]

### ECF 62 Motion to Dismiss Count II For Lack of Subject Matter Jurisdiction (69 pages)

The Court finds it unnecessary to reproduce the entirety of this document here, but simply states that the entire motion is preposterous on its face.  As an attorney who practiced bankruptcy law *in this Court*, Peter Wizenberg must have known that this Court has subject matter jurisdiction to determine the dischargeability of debts under the express provisions of 28 U.S.C. § 157(b)(2)(I).

### ECF 68 Defendant's Motion for Reconsideration of Order and Motion to Vacate Order Denying Defendant's Motion for Summary Judgment (153 pages)

The document is so ridiculous that it has warranted attachment (without exhibits), and is included in these materials as **Appendix B**.

61. This error, if not remedied, will cause a monumental waste in time, energy, and resources of this Honorable Court, the parties, prospective jurors, appeals courts, etc., and will facilitate great harm and injustice to the Defendant and his wife.

Defendant ends his pleading with some pointless poetry.

*Haiku*

All know: talk is cheap;

Liars can claim anything;

No evidence?! Balk!

---

[16] Alarmed by the language present in ECF 36, the Court set a status conference for April 18, 2018, in an attempt to reel in the Defendant's behavior.  This attempt failed.

### ECF 114 Defendant Shows Cause in Response to Order to Show Cause Why Sanctions Should Not Be Imposed Upon Defendant Peter Allan Wizenberg (6 pages)[17]

3. Defendant admits that at the time that defendant responded to plaintiff's Request for Production that defendant, in good faith, did not know that defendant was required to send plaintiff a privilege log.

6. Defendant responded that he was unaware that he was required to do so.

22. Defendant is innocent of plaintiff's malicious, meritless, false, and scurrilous charges. After further consideration, defendant, being innocent and having nothing to hide, decided to waive his attorney/client privilege and on August 19, 2018 sent links to copies of all of the emails listed in the privilege log to plaintiff. Hence, there are no more issues concerning the privilege log.

### ECF 123 Defendant's Response in Opposition to Plaintiff's Supplement to Motion for the Imposition of Sanctions Against Defendant (96 pages)

13. However, below is a list of supporting evidence of Defendant's highly germane questions relevant to Plaintiff's false accusations and his long history of dishonesty and ill will, questions focused on:

j. Plaintiff's history of violence against Defendant, violence committed by Plaintiff against Defendant decades ago while Plaintiff was an adult, contrary to Plaintiff's attorney's utterly false and unsupported assertion that it was when the Plaintiff was a child;

---

[17] The suggestion that an attorney was unaware of what a privilege is or what is required when asserting attorney/client privilege is alarming, and the various filings and hearings related to whether or not a privilege log was required needlessly and unreasonably extended this litigation.

k. Plaintiff's long history and propensity for false allegations, including utterly bogus and false allegations to the police of "domestic violence" against his frail, sickly mother (in 2005 when she was age 80!) and his ex-wife;

l. Plaintiff's history of dishonesty and theft by frequently criminally using his mother's credit card while she was unconscious and dying as evidenced by a MasterCard statement;

m. Plaintiff's extreme hostility towards Defendant evidence by Plaintiff's calling social services to investigate Defendant, falsely accusing Defendant of abusing his unconscious dying mother in the hospice;

n. Plaintiff's maniacal hatred of Defendant evidenced by his repeatedly screaming at the top of his lungs, "murderer" at Defendant, while hospice staff and Defendant's wife were present.

**ECF 165 Supplement to Defendant's Response in Opposition to Plaintiff's Supplement to Motion for the Imposition of Sanctions Against Defendant (9 pages)**

6. The Defendant himself erred in not immediately appealing the Court's clearly erroneous Order [ECF 84]. It is, however, relevant, that Defendant's Motion, under the law and the facts, should have been granted by the Court as the just granting of said motion would have precluded the Plaintiff's frivolous, malicious, greedy quest for sanctions.

28. Unfortunately, if the Court clearly errs yet again, and goes on to clearly erroneously and egregiously impose sanctions against Defendant for Defendant's good faith Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF 62] said motion being both amply grounded in both

the law and in fact, Defendant will of course, timely appeal, and, unfortunately, many people will

need to devote their time and energies over the appeal of a clearly erroneous Order.[18]

**ECF 176 Defendant's Response in Opposition to Plaintiff's Motion for Two Day Extension to File Response to Defendant's Motion for Partial Summary Judgment (3 pages)[19]**

2. Pursuant to the Scheduling Order, Plaintiff had until November 28, 2018 to file his response to

the Motion.

3. On November 28, 2018 at approximately 7:29 pm, approximately 4.5 hours before the

deadline, Plaintiff filed his Motion for Two-Day Extension to File Response to Defendant's

Motion for Partial Summary Judgment [ECF 175].

4. Plaintiff had 21 calendar days, which is more than 500 hours for Plaintiff to prepare a response

to Defendant's Motion for Partial Summary Judgment.

5. Plaintiff himself admits that his vacation was a "pre-planned vacation over the Thanksgiving

holiday". The "Thanksgiving holiday" would, at most, be four calendar days, from Thursday

through Sunday.

6. If Plaintiff had devoted a minuscule 1% of the more than 500 hours of time he had to respond,

he would have had more than 5 hours to work on and file a response.

---

[18] The Court notes that although it is Defendant's absolute right to file an appeal from any final order, it appears the Defendant's motivation in doing so is not motivated by a desire to correct an error of fact or law but instead motivated by a desire to for Plaintiff to incur the maximum possible amount of attorneys' fees.
[19] At ECF 175, Plaintiff's Attorney Mark Roher asked the Court for a two-day extension to file a response brief. That Motion was granted by Order at ECF 177.

7. Plaintiff's utter failure to do his duty and his irresponsibility in planning when he had a completely planned and foreseeable vacation should not relieve him of his responsibility to obey deadlines.

8. Plaintiff's neglect is inexcusable.

9. Defendant does not believe for one moment that Plaintiff acts in good faith. On the contrary, there is ample evidence that Plaintiff's behavior has been in extremely bad faith, and his egregious and false and malicious behavior, including but not limited to outright lying to the court, shocks the conscience.

10. Defendant asserts that the granting of Plaintiff's motion would evince extreme prejudice against Defendant by the court, most especially compared to the way the court has treated the Defendant.

### ECF 180 Defendant's Report to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment for Count I Against Plaintiff (6 pages)

12. In addition to attempting to mislead the Court into clear error, by citing an inapt case, i.e., one that is off point, Plaintiff makes risible and demonstrably false claims in his Response. We will examine his ludicrously false claims in order of their occurrence. Parenthetically, Defendant cannot emphasize enough, that despite Plaintiff having a completely meritless and frivolous suit, a pure totally evidence-free complaint -- one totally devoid of even a scintilla of evidence implicating Defendant -- Plaintiff's claims are also substantively malicious, utterly false in substance -- hence wicked -- and his entire complaint is based upon nothing but his own numerous conclusory false allegations with absolutely ZERO corroborating evidence. It is

Defendant's view that it would be breathtakingly astonishing -- especially to appeals courts -- if such a meritless, flagrantly evidence-free case was erroneously won by Plaintiff.[20]

13. In paragraph 5 of Plaintiff's Response, Plaintiff writes: "In fact, the following testimony of Plaintiff cited by Defendant in the motion demonstrates that Defendant stole some of Plaintiff's own personal items…" Plaintiff's feeble and failed attempt at reasoning is, to pull no punches, quite sad. Plaintiff's own uncorroborated false assertions at what he claims existed, and when he claims it existed, and where he claims it existed, and what he claims was his, and what he claims was not his, does not and indeed cannot "demonstrate" that Defendant "stole" anything. 14. In paragraph 6 of Plaintiff's Response, Plaintiff falsely writes "where he [Defendant] admits that there are also items at issue that belonged to Plaintiff." This is not only flat out false, it is an outright lie, apparently in an attempt to deceive the Court. Defendant admitted no such thing. Plaintiff's numerous claims are riddled with lies. Plaintiff lies about what existed, when it existed, where it existed, and that Defendant "stole" the allegedly existing items. Plaintiff cannot cite and is unable to point to any record evidence where Defendant "admits that there are items at issue that belonged to Plaintiff[.]" Defendant admitted nothing to Plaintiff's lies.

## ECF 190 Defendants Opening Statement (326 pages)

"לֹא־תַטֶּה מִשְׁפָּט"

**"You shall not judge unfairly"** - Deuteronomy 16:19

---

[20] *See* footnote 18.

12. Plaintiff must prove by a preponderance of evidence that each and every item was located in a place that was not accessible to any other human beings on planet Earth other than the defendant!

13. Plaintiff must prove by a preponderance of evidence that each and every item was not taken by other people, e.g., burglars, Howard Wizenberg, his sons, the people in Sara Howeller's law office in Seminole County where Sara Howeller swore under penalty of perjury [ECF 188] that she kept a key to the home, Pantanassa Wizenberg, etc.

23. Plaintiff failed to even bother to allege in his false complaint [ECF 8] that he had title to the items listed in Exhibit C of his false complaint! This is easily proven by reading his false complaint and noting his abject failure to even allege title -- Oy!

35. Defendant knows, extremely well, that plaintiff has a very, VERY long history of extreme lying, and is an ardent practitioner of the "big lie" technique. Plaintiff understands perfectly well that one who lies as much and as HUGELY as he does is an outlier in the normal human population, and most people have no such experience with the vastness and depth of such pathological lying. So, they naively and credulously, when confronted with plaintiff's HUGE false accusations, that so much stuff was stolen -- a long laundry list -- these credulous people figure to themselves -- because they're used to dealing with normal human behavior -- 'well, at least some of what he claims is likely true'. This is precisely how plaintiff gets away with and is rewarded for his telling big lies. The "big lie" strategy is to throw enough "stuff" against the wall and hope that some credulous people will believe some of it, so some of it "sticks."

36. Plaintiff is so shameless and brazen with his false accusations, one small example will suffice: On September 6, 2005 he accused to the police his 80-year-old mother, Anna

Wizenberg, who plaintiff testified on p. 63 of the transcript of his August 7, 2018 deposition, was sick and elderly and who had trouble walking, he accused her of domestic violence! Howard Wizenberg actually filed a petition against his own octogenarian mother for domestic violence! I leave Howard Wizenberg's veracity for any and all readers of this to judge. A copy of the docket evidencing his not credible accusation against his mother is attached hereto as Exhibit F.

37. Defendant takes solace in the hope that court decisions in the United States are supposed to be based solely on admissible evidence and nothing but admissible evidence, and that there are higher courts which exist to correct the clear errors of the lower courts. In this case, plaintiff has no evidence, absolutely ZERO evidence for each of the elements of his false accusations, and it is absolutely impossible for a reasonable and unbiased factfinder to find in plaintiff's favor. This is defendant's ace in the hole -- especially if appeals will happen.[21]

66. This, finally, concludes defendant's Opening Statement.

### ECF 255 Defendant's Response in Opposition to Plaintiff's Renewed and Supplement Motion for Attorney's Fees (5 pages)

2. Plaintiff's [ECF 215] falsely imputes -- with absolutely zero evidence -- bad faith conduct on the part of Defendant, but does not discuss, of course, Plaintiff's own provable bad faith conduct, frivolous and vexatious actions, in his purposefully malicious, bad faith scheme of seeking to "railroad" the Defendant with respect to Plaintiff's bad faith transgressions regarding the privilege log. The issues specifically concerning Plaintiff's bad faith scheme regarding the privilege log and Defendant's good faith innocent conduct, is now outside of this Bankruptcy Court's hands and is currently the subject of an appeal in U.S. District Court, case number: 18-

---

[21] *See* footnote 18.

cv-62321-MGC and, of course, will likely ultimately be resolved there, or perhaps in the Eleventh Circuit Court of Appeals.[22]

---

[22] *See* footnote 18.

# APPENDIX B

Defendant's Motion for Reconsideration of Order And Motion to Vacate Order Denying Defendant's Motion for Summary Judgment

[ECF 68]

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

Case No. **17-23522-JKO**

**Peter Allan Wizenberg**,

Chapter **7**

Debtor.

_____/

**Howard Wizenberg**,

Adv. No. **18-01019-JKO**

     Plaintiff

v.

**Peter Allan Wizenberg,**

     Defendant.

_____/

## DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER AND MOTION TO VACATE ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Defendant, PETER WIZENBERG, "Defendant", and, in accordance with *F. R. Civ. P.* 60(b) made applicable through *F. R. Bank. P.* 9024 herein files this, his Motion for Reconsideration of the Order [ECF 50] and Motion to Vacate the Order [ECF 50] which Denied Defendant's Motion for Summary Judgment [ECF 36], and in support thereof states as follows:

## PRELIMINARY STATEMENTS & BACKGROUND

*"I should like to have every court begin,*
*"I beseech ye in the bowels of Christ, think that we may be mistaken.""*

Learned Hand, *Morals in Public Life* (1951).

1. What follows is a horribly incomplete, yet nevertheless informative set of statements and background, given here *before* the legal arguments of this motion are presented later in this document, under the heading "Legal Arguments." The complete, untold story, is an appalling story, and, like many intrafamilial horror stories, almost all of it is undocumented, so, the most horrifying parts are not stated here.

2. Plaintiffs get the emotional and psychological advantages of constituting, creating, and coloring a narrative, 'painting a picture' in their complaints, while defendants are disadvantaged by being limited to responding with mere and bare legalistic denials and affirmative defenses, and not giving their counter-narratives. The purpose of this statement and background is to point out and document -- where documentation is possible -- that Plaintiff's false and malicious accusations against Defendant in this case, are part and parcel of his nefarious attempts to 'game the system.' What's sadly quite remarkable is how far the system unfortunately lets one go, even when one has, as in this instant case, absolutely zero, yes, *exactly zero* evidence against another. Defendant is painfully and keenly aware that the uninitiated will find Plaintiff's extreme falseness and extreme

maliciousness hard to fathom. Defendant only hopes that this case will be decided *purely* on the bases of the evidence -- or more accurately, Plaintiff's utter total lack of implicating evidence -- and the law.

3.  Plaintiff and Defendant are brothers. Plaintiff is 59 years old and Defendant is 55 years old.

4.  Plaintiff has, for more than half a century, engaged in appalling acts of extreme hatred, and multiple crimes, including but not limited to physical violence, and multiple forms of horrific abuse towards Defendant, including his false and malicious lawsuits and Bar complaints.

5.  As a boy, Plaintiff was so extremely physically violent and abusive and also emotionally and psychologically violent and abusive towards Defendant, and also towards our Holocaust survivor parents, and was in such frequent trouble with the police being called to our home due to Plaintiff's inumerable acts of domestic violence, that Plaintiff had to be removed, for years, from our home and live more than 20 miles away from the family's apartment in the Bronx, in a special facility for disturbed and troubled boys in Pleasantville, NY, and then later at another facility in New York City.

6.  Plaintiff has a demonstrated, long history of using a form of the "big lie technique," and making incredibly false and malicious accusations against others.

7.  Plaintiff purposefully (and, unfortunately, quite successfully with one relatively new judge in particular, and also where people don't know him and cannot even begin to fathom his audacious falsensess and extreme maliciousness) employs a

form of the "big lie technique", where he falsely maligns others with multiple, huge, big lies -- utterly false -- so that his audience will be prone to credulously infer that it is likely that at least *some* parts of his big lies are true. Plaintiff's successful strategy is throw enough false and malicious lies "against the wall" and hope that "some of it will stick." Plaintiff has learned that he doesn't need evidence, only lots of false detailed accusations.

8. An example of one of Plaintiff's false accusations, where there is a document that I can refer to, is his making a false and malicious accusation to the police, that our then octogenarian sickly, mother, a Holocaust survivor, a woman who at that time had many, many serious medical problems, and who had difficulty walking, was guilty of domestic violence against him. Plaintiff is approximately 6'2" tall and weighs approximately 200 lbs. Our sickly, late octogenarian mother was 5'4" tall. One shudders at the sort of mind, the sort of character, of a grown man making such an accusation against his own frail, elderly mother to the police! A copy of the online docket evidencing Plaintiff's not-credible (to say the least) accusation of domestic violence against our late mother is attached hereto as Exhibit "A".

9. Plaintiff also, incredibly, made numerous not-credible accusations against his ex-wife over the years, including for domestic violence. Plaintiff has a well known, (among those who've known him) history of violence and intimidation, and his ex-wife is much slighter and smaller than he is. A copy of the online docket evidencing Plaintiff's accusation of domestic violence against his ex-wife is attached hereto as Exhibit "B".

10. Parenthetically, to illustrate with documentation Plaintiff's character and what a good, responsible citizen Plaintiff is, Plaintiff has a recent arrest record for driving without a valid driver's license. A copy of the online docket evidencing Plaintiff's arrest is attached hereto as Exhibit "C".

11. Plaintiff succeeded in making numerous false and extremely malicious accusations against his ex-wife, who had to rescue her young sons and flee him, in the Massachusetts Family Courts and thereupon successfully hoodwinked said Courts, and ultimately won physical custody of his two sons. Unfortunately, Defendant possesses no documents regarding this.

12. Plaintiff has learned his lessons very well, that he can be amply rewarded, with little risk of downside, as he is almost always Judgment-proof or near Judgment-proof, by making utterly false, meritless, malicious accusations in the courts.

13. Plaintiff is savvy, and is keenly aware of, and purposefully attempts to 'build a [false] record' for his false and malicious accusations against others. In an email to Defendant, Plaintiff speaks of his ex-wife as "trying to build a record" in trying to make a case against Plaintiff. This email is evidence of Plaintiff's awareness of Plaintiff's own need to "build a record" when making his false accusations and explains *exactly* why Plaintiff schemed to go to the local police station and file a false and malicious police report against Defendant; to wit, to buttress his evidence-free and false and malicious case against Defendant with the credulous who cannot fathom the depths of how incredibly false and malicious a human

being Plaintiff can be. A copy of Plaintiff's email to Defendant is attached hereto as Exhibit "D".

14. It is noteworthy that if one reads the police report, Plaintiff provides absolutely zero evidence to the police that implicates Defendant. The police report stated that Plaintiff accused Defendant, and, in the words of the report, that Plaintiff "is sure the residence was not burglarized and Peter Wizenberg has the missing items." Note that this is purely an allegation, and is *not,* in any way, shape, or form, *evidence*. A copy of Plaintiff's false and malicious police report, in his attempt to build a false record, is attached hereto as Exhibit "E".

15. The police *never* even contacted Defendant regarding Plaintiff's false and malicious police report, *not even once*, despite having Defendant's address and telephone number. There is no record of, indeed there can be no record of, the police never following up on Plaintiff's false report of theft, indicating that the police did not find Plaintiff's false report credible or actionable in any way whatsoever.

16. Plaintiff forged our late mother's signature and stole 150 shares of Disney stock, (now after a stock split those shares would be 300). Defendant, contemporaneous with the theft, was in communication with attorney Sara Howeller regarding Plaintiff's theft of the Disney shares. Because Plaintiff is very likely judgment-proof, Defendant has chosen not to hire an attorney in Seminole County to pursue this against Plaintiff. A copy of emails of Defendant and attorney Sara

Howeller communicating regarding Plaintiff's theft is attached hereto as Exhibit "F."

17. Plaintiff stole, from the estate, my late mother's dog, a white poodle/Maltese mix. It was my mother's express wish, expressed verbally to me, that I get her dog as she stated that Plaintiff is irresponsible regarding animals and was cruel to them as a youth. Indeed, Plaintiff, when he was approximately 22 years old, killed Defendant's pets, a cockatiel named "Aristotle" and two gerbils, "Murray and Isaac."

18. At trial in Seminole County, Florida, the *only* evidence that Plaintiff could offer in his testimony that Defendant was linked to or guilty of the alleged disappearance of allegedly existing items that he allegedly had title to and that were allegedly located in our late mother's home was, in his own exact words, an "assumption", on page 8, line 1 of the official court transcript of his testimony. A copy of the transcript is attached hereto as Exhibit "G."

19. A blatant and brazen and thoroughly documented example of Plaintiff's utter lack of good faith and utter lack of any goodwill, and 'unclean hands' is the following: Our late mother's estate directed that her paid off house be sold and that the proceeds from the sale be divided evenly between Plaintiff and Defendant. However, after her death, Plaintiff moved himself in to the home to live there rent free. Moreover, Plaintiff purposefully vetoed and purposefully sabotaged a prospective sale of the home, by refusing to co-sign a contract, for $150,000.00, a very excellent price for that home at that time, with a ready, willing, and qualified

buyer who signed a contract. Plaintiff refused a settlement where he would pay a fair market price for his half of the house. Ultimately, Defendant was forced to sue Plaintiff for Partition in Seminole County, Florida, Case Number: 2012-CA-5131-16-G incurring substantial attorney's fees, as Defendant lives in Broward County and the home was located approximately 250 miles away in Seminole County, and the house had to be sold at the Courthouse at auction, bringing in a lower price of $141,000.00, a price lower than the price a qualified buyer had offered.  This waste of the estate's assets was caused by Plaintiff maliciously moving in to the home and maliciously preventing its sale. A copy of the Judgment that Defendant obtained in his suit against Plaintiff for Partition to force the sale of the home at auction, is attached hereto as Exhibit "H".  A copy of an email referencing the $150,000 sale price to a prospective, qualified buyer is attached hereto as Exhibit "I."

20. As further evidence of Plaintiff's maliciousness, and utter lack of goodwill and utter lack of clean hands, the woman who was the successful bidder of the courthouse auction of our late mother's home, Linda Chadwick, was forced, by Plaintiff's maliciousness in his refusal to move out and vacate the premises, to hire an attorney to go to court to have him forcibly evicted after she had won possession of the home. The documents evidencing this are attached hereto as Exhibit "J".

21.  Defendant, whom his late mother called, "the good son", had initially, on or around the time of my mother's dying days, and shortly after her death, tried in

good faith and in vain to come to an agreement whereby Plaintiff would purchase

Defendant's share *at a below market price*, but Plaintiff refused. When dealing

with Plaintiff, 'no good deed ever goes unpunished.' A copy of emails in which I

entertain an offer to sell my share of the house to Plaintiff, which exhibits my

good faith is attached hereto as Exhibit "K."

22. Plaintiff, and our half-sister, have a history of filing malicious and false

complaints against Defendant with the Florida Bar, despite there having been no

record anywhere of an attorney/client relationship between Plaintiff and

Defendant nor any attorney/client relationship between half-sister and Defendant.

Thus far, their prior Bar complaints have been found to have been meritless by the

Florida Bar. However, a relatively new and recent complaint of Plaintiff's against

Defendant is currently pending and is in abeyance with the Florida Bar, pending

the outcome of Plaintiff's false and malicious lawsuits against Defendant,

including this instant case. A copy of the Florida Bar's Dismissal of their earlier

false and malicious complaints against me is attached hereto as Exhibit "L."

23. Defendant strongly believes, but has no documents as evidence, that Plaintiff is

likely financing his lawsuit with monies from our wealthy half-sister. She was

bitterly estranged from my mother for more than three decades, as my mother

loudly, and extremely often, proclaimed that she was a "thief." During my

mother's last days of dying in a hospice, our half-sister and Plaintiff, without

permission, illegally stayed and slept in our mother's home for many days, and

were busily ransacking my mother's home stealing anything of our mother's

belongings that they fancied they could get away with stealing. Defendant's wife eyewitnessed this first hand. Indeed, the half-sister stole Defendant's wife's perfume, and when physically confronted, sheepishly took it out of her purse and gave it back to Defendant's wife. Half-sister thought that the perfume belonged to our dying mother, that's why she swiped it -- along with many, many other things!

24. Defendant, while living in the hospice in the room with his dying mother, was forced to telephone a locksmith to change the locks on our mother's home in an emergency situation, because Plaintiff was, *illegally*, caught by Defendant's wife, red-handed, in the *criminal* act of having a locksmith *illegally* change the locks on our mother's home. The Police had to be called, but no arrest was made. A copy of the receipt for the locksmith who Defendant's wife, at Defendant's telephonic instruction, was forced to hire, as part of his duty as his mother's Power of Attorney, to protect my mother's property from Plaintiff's and half-sister's thievery, is attached hereto as Exhibit "M."

25. It should be clear from all of the foregoing, that Plaintiff utterly lacks any good faith, lacks any goodwill, and lacks clean hands. Indeed, his hands are "criminally filthy" to a maximal degree.

26. And now that Defendant has presented his counter-narrative, we proceed to the all-important, purely legal arguments as to why Defendant's Motion that the Court's Order Denying Defendant's Motion for Summary Judgment should be Reconsidered be GRANTED, why the Order denying Defendant's Motion for

Summary Judgment should be VACATED, and exactly why Defendant's Motion

for Summary Judgment should be GRANTED by this Honorable Court.

### *LEGAL ARGUMENTS FOR MOTION*

27. On Wednesday morning, April 18, 2018 among the hearings held in this case on

that day, one of them was a very brief hearing by this Honorable Court on

Defendant's Motion for Summary Judgment [ECF 36].

28. Defendant argued for his motion for Summary Judgment against Plaintiff on

Count I, and correctly and accurately pointed out that Plaintiff's First Amended

Complaint had cited absolutely zero evidence *in support* of the allegations of

wrongdoing in Count I. In short, though Plaintiff's Count I indeed has allegations,

in an attempt to falsely fashion a Count for the nondischargeability of a debt due

to its allegedly being willful and malicious, a debt to alleged thefts allegedly

committed by Defendant against Plaintiff. What is of the utmost *legal* importance

is that Plaintiff's First Amended Complaint and its Exhibits, and subsequent

discovery responses have absolutely *zero* evidentiary support for the allegation of

theft implicating Defendant. *Absolutely zero!* That Count I is *evidence-free* in its

false attempt to implicate Defendant is the essence of why Count I should be

dismissed.

29. Plaintiff's Count I consists of purely evidence-free assertions of wrongdoing.

30. It is precisely because Plaintiff's Count I is a purely *evidence-free* Count, *and that* this Honorable Court mistakenly employed the wrong legal standard, that this Honorable Court erred by issuing an Order denying Defendant's Motion for Summary Judgment. [ECF 50].

31. At the hearing on Defendant's Motion for Summary Judgment on April 18, 2018, during oral argument, the Defendant stated, "With respect to the allegation of theft, the reason I moved for summary judgment of that is the plaintiff has so far provided zero evidence in support of the allegations. The plaintiff made an allegation. The plaintiff showed that the plaintiff went to the police and made a false police report, or made a police report. The plaintiff has cited zero, absolutely zero evidence in support of the allegation of theft." Page 20, lines 23 -25, and page 21, lines 1-6, Transcript of Hearing. A copy of the official transcript of the hearing on April 18, 2018 is attached hereto as Exhibit "N".

32. At the hearing, this Honorable Court orally stated, in immediate response to Defendant's statement above, "By and large, Mr. Wizenberg, evidence is something that is adduced at trial. The question is whether the complaint states a claim upon which relief can be granted. I find it does. I will deny both motions for summary judgment." Page 21, lines 7 -11, Transcript of Hearing, attached hereto as Exhibit "N".

33. Quite unfortunately for Defendant, this Honorable Court erred in stating that "[t]he question is whether the complaint states a claim upon which relief can be granted." Defendant was *not* in his motion seeking to dismiss the count, nor was

Defendant invoking *F. R. Civ. P.* 12(b)(6) which states "failure to state a claim upon which relief can be granted", rather, Defendant's Motion was for Summary Judgment, and Defendant was explicitly invoking *F. R. Civ. P.* 56 in his motion.

34. Whether the complaint states a claim upon which relief can be granted is *not* the legal standard for Summary Judgment, not according to case law, and not according to *F. R. Civ. P.* 56, as the Incorporated Memorandum of Law below conclusively demonstrates.

### *Incorporated Memorandum of Law Regarding the Legal Standard for Summary Judgment*

35. Under *F. R. Bankr. P.* 7056 (incorporating *F. R. Civ. P.* 56) summary judgment is proper if there is no genuine dispute of any material fact and the movant is entitled to summary judgment as a matter of law.

36. A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex v. Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

37. After the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477

U.S. at 324; *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997).

38. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986).

39. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

40. A dispute about a material fact is 'genuine' if and only if the "***evidence*** [emphasis added] is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 248.

41. If the Plaintiff proffers *no evidence in support* of his allegations, legally speaking, there cannot possibly even be a *genuine* dispute about a material fact.

42. The key requirement for a successful motion for summary judgment is that no genuine issue of material fact exists. *Anderson,* 247-248.

43. As the Plaintiff has proffered absolutely no evidence whatsoever, none, *in support* of his allegations of theft implicating defendant, there cannot possibly even exist a genuine issue of material fact.

44. Mere allegations, without any supporting evidence for the allegations implicating defendant, cannot be sufficient to overcome a movant party's motion for summary judgment.

45. There must be *more* than a scintilla of evidence supporting allegations.

46.  The evidence *must* be sufficient so that a reasonable factfinder can find for the non-moving party.

47. If the evidence does not suffice for a reasonable factfinder to find in favor of the non-moving party, then the moving party's motion for Summary Judgment must be granted.

48. In this case, the Plaintiff lacks *any* evidence which implicates Defendant, so the Plaintiff does not have *any evidence* in support of his allegations, and does not even have a 'scintilla!'

49. The Defendant has conclusively proven and pointed out a total *absence* of evidence in support of Plaintiff's allegations of wrongdoing in Count I.

50. The Plaintiff, in opposing a motion for Summary Judgment, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

51. The non-moving party "may not rely merely on allegations...in its own pleading". *Fed R. of Civ. P.* 56(e); *Matsushita,* 475 U.S. at 587.  This is *exactly* what Plaintiff is doing, and he should not be allowed to get away with it!

52. The non-moving party must come forward with affirmative *evidence* to support its claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986). This is *exactly* what Plaintiff has utterly failed to do.

53. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Derby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

54. If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.

55. The use of summary judgment within the judicial system is encouraged. Summary judgement is regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

56. The rule regarding the scope and purpose of summary judgment states that it shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *F. R. of Civ. P.* 1.

57. Plaintiff in support of his allegation of theft in Count I has *not* proffered *any* evidence whatsoever that implicates Defendant in the alleged theft.

58. Specifically, Plaintiff has not provided *any* evidence in *any* way in the form of:

   a. Any witnesses to the act of alleged theft by Defendant;

   b. Any witnesses who can exclude any act of alleged theft by a person or persons other than Defendant;

   c. Any witnesses who have seen that Defendant unlawfully possesses or has ever unlawfully possessed any of the items that Plaintiff alleges that Defendant stole;

d.  Plaintiff alleges a VAST, HUGE expansive time frame for encompassing Defendant's alleged act of theft insofar as Plaintiff alleges in paragraph 18 of his First Amended Complaint [ECF 8] that the alleged act of theft occurred "On or before January 14, 2011" indicating that Plaintiff has *no* evidence of even any reasonable time frame in support of his false and malicious allegation of Defendant's alleged act of theft.

e.  Any physical evidence of the act of alleged theft by Defendant;

f.  Any forensic evidence of the act of alleged theft by Defendant;

g.  Any documents evidencing the act of alleged theft by Defendant;

h.  Any records evidencing the act of alleged theft by Defendant;

i.  Any photographic recordings of the act of alleged theft by Defendant;

j.  Any video recordings of the act of alleged theft by Defendant;

k.  Any audio recordings of the act of alleged theft by Defendant;

l.  Any evidence that Defendant is or was in personal possession of any of the alleged items that Plaintiff alleges that Defendant stole;

m.  Any evidence that Defendant took the alleged items out of his late mother's home;

n.  Any evidence that the items alleged to be stolen by Defendant were in a location accessible to Defendant.

o.  Any evidence that the items alleged to be stolen by Defendant even existed!

p.  Any evidence that the items alleged to be stolen by Defendant existed during the VAST time frame of the alleged theft.

q.  Any evidence that the Plaintiff even has standing to complain about an alleged "theft" as the Plaintiff has not provided any evidence that Plaintiff even had title or even a beneficial interest to the items alleged to be stolen by Defendant.

59. Plaintiff's First Amended Complaint [ECF 8] merely provides evidence of his having made a [false] allegation; to wit, that he made his false allegation to the police in the form of a copy of a police report. (His building a false record.) This is purely evidence of the allegation, and is *not* and *cannot* possibly be reasonably construed as evidence *in support* of the allegation. Indeed, the police report, attached hereto as Exhibit "E", merely states "Howard further stated that he is sure the residence was not burglarized and Peter Wizenberg has the missing items." This is merely a statement of Howard's *allegation* and cannot possibly be reasonably construed as evidence *supporting* the allegation.

60. This Honorable Court, as all human institutions may occasionally do, made an error, which can and should be remedied.

61. This error, if not remedied, will cause a monumental waste in time, energy, and resources of this Honorable Court, the parties, prospective jurors, appeals courts, etc., and will facilitate great harm and injustice to the Defendant and his wife.

62. There is a hearing before this Honorable Court on Defendant's Motion to Dismiss Count II of Plaintiff's First Amended Complaint for Lack of Subject Matter

Jurisdiction scheduled for Tuesday, June 19, 2018 at 2:30 pm. Hypothetically speaking if Defendant is wrong, (he is not, as Defendant *knows* he is factually innocent), and Plaintiff has evidence that *support* Plaintiff's allegations, evidence that *implicates and links* Defendant to the alleged "theft", *not mere allegations*, but *actual evidence* that *supports* the allegations, let there at least be a hearing on June 19 on this Motion where Plaintiff can furnish his "evidence" in open Court (or, more accurately and alternatively, furnish, what Defendant knows will be his 'evildance'-- as he has no evidence), and attempt to defeat Defendant's quest for justice and relief, Defendant's Motion for Summary Judgment.

63. However, if the Plaintiff shows up to Court without *any* evidence *in support* of his allegations, or so little and flimsy so-called "evidence" that it does not rise to the threshold level where a reasonable factfinder could find for the Plaintiff, then Defendant's Motion should, of course, be GRANTED, and monumental wastage of numerous people's time and resources, e.g., parties, jurors, judges, etc., and grievous injustice will have been averted.

64. No party would be unfairly prejudiced by the granting of a motion for Summary Judgment on an evidence-free count.

*Haiku*

All know: talk is cheap;
Liars can claim anything;
No evidence?!  Balk!

**WHEREFORE**, Defendant, Peter Wizenberg, respectfully requests that this Honorable Court **GRANT** this Motion to Reconsider the Order denying Defendant's Motion for Summary

Judgment, and issue an Order Vacating its prior Order denying Defendant's Motion for Summary Judgment and, also issue an order **GRANTING** Defendant's Motion for Summary Judgment, or, in the alternative, schedule a hearing for oral arguments regarding this instant motion, (a hearing on Defendant's Motion to Dismiss Count II is already calendared for Tuesday, June 19, 2018 at 2:30 pm and a hearing on this motion can be scheduled that day), so that Defendant's Motion for Summary Judgment can be heard by this Honorable Court, and where Plaintiff will have his opportunity to finally present *any* evidence *in support* of his allegation that Defendant stole the items listed in his Count I, and attempt to defeat Defendant's Motion, and all other such relief that this Honorable Court deems to be just and proper.

Dated: June 5, 2018            Peter Wizenberg, Esq.
*Pro Se Defendant*
662 SW 158 Terrace
Pembroke Pines, FL 33027
Email: peter@wizenberglaw.com
Telephone: 786-260-7075

By: /s/ Peter Wizenberg
Peter Wizenberg
Florida Bar No.: 34500

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 5th day of June, 2018, a true and correct copy of the foregoing was served by CM/ECF on all parties listed below.

/s/ Peter Wizenberg
Peter Wizenberg

**Mark S. Roher, Esq.**
**mroher@markroherlaw.com**